# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:  )
 )  **JUDGE RICHARD L. SPEER**
Bridget Ramlow  )
 )  Case No. 09-32296
    Debtor(s)  )
 )

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case for Abuse pursuant to 11 U.S.C. § 707(b)(1) and 11 U.S.C. § 707(b)(3). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity and finds, for the reasons set forth herein, that the Motion of the United States Trustee should be Denied.

## DISCUSSION

The Debtor, Bridget Ramlow, is a recently divorced, single mother of two teenage children, ages 17 and 15. On April 10, 2009, the Debtor (hereinafter the "Debtor") filed a petition in this Court for relief under Chapter 7 of the United States Bankruptcy Code. (Doc. No. 1). In seeking bankruptcy relief, the Debtor represented to the Court that she was deeply insolvent. The specific figures presented to the Court were as follows: Assets of $4,147.00; and liabilities of $243,873.14. Of the Debtor's liabilities, $238,075.14 was composed of unsecured, nonpriority debt; the remaining debt, totaling $5,798.00, consisted of a single obligation secured against her only vehicle, a 1997 Dodge Intrepid.

A discharge in bankruptcy is a privilege, not a right. *See, e.g., In re Juzwiak*, 89 F.3d 424, 427 (7th Cir.1996). A financially stressed individual, such as the Debtor, therefore, has no right to the relief afforded by the Bankruptcy Code. In the case of *In re Krohn*, the Sixth Circuit Court of

**In re: Bridget Ramlow**
**Case No. 09-32296**

Appeals explained: "There is no constitutional right to a bankruptcy discharge, and the 'fresh start' provided for by the Code is a creature of congressional policy. Congress, within the limits set by the Constitution, is free to deny access to bankruptcy as it sees fit." 886 F.2d 123, 127 (6th Cir. 1989), *citing United States v. Kras*, 409 U.S. 434, 446-47, 93 S.Ct. 631, 638-39, 34 L.Ed.2d 626 (1973).

Acting within its powers, Congress delineated within the Bankruptcy Code conditions under which a debtor may be denied access to the benefit of the bankruptcy process by having their discharged denied or their case dismissed without the entry of a discharge. In this matter, the United States Trustee (hereinafter the "UST") seeks the dismissal of the Debtor's bankruptcy case. Matters concerning the dismissal of a case, which affects both the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, are core proceedings pursuant to 28 U.S.C. §§ 157(b)(2)(J)/(O). As a core proceeding, this Court has been conferred with the jurisdictional authority to enter a final order in this matter. 28 U.S.C. § 157(b)(1).

As the statutory basis for its Motion to Dismiss, the UST cites to 11 U.S.C. § 707(b)(1) and § 707(b)(3). Regarding these provisions, § 707(b)(1) is a foundational provision, providing for dismissal if it is determined that granting relief to a debtor under Chapter 7 of the Code would be abusive. Section § 707(b)(3) then provides a methodology by which to assess the existence of abuse under § 707(b)(1). In relevant part, these provisions provide:

> (b)(1) After notice and hearing, the court ... may dismiss a case filed by an individual debtor under this chapter whose debts are primarily consumer debts . . . if it finds that the granting of relief would be an abuse of the provisions of this chapter.
>
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–

Page 2

In re: Bridget Ramlow
Case No. 09-32296

      (A) whether the debtor filed the petition in bad faith; or

      (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse.

In seeking to have the Debtor's case dismissed in accordance with these provisions, the UST did not make any allegations of "bad faith" pursuant to § 707(b)(3)(A), but instead sought dismissal based solely on the methodology contained in § 707(b)(3)(B): the totality of the Debtor's financial circumstances. In taking this position, the UST relies solely on its contention "that the debtor has the ability to pay her creditors." (Doc. No. 13, at pg. 1).

It has been Congressional policy toward the Bankruptcy Code to encourage debtors to repay their debts. *See In re Copper*, 426 F.3d 810, 814 (6th Cir. 2005) (observing that the rationale for readily granting conversion under § 706 is to encourage debtors to repay their debts). It has also been Congressional policy to limit bankruptcy relief to only those debtors truly in "need" of such relief. *In re Krohn*, 886 F.2d at 126. Consistent with these policies, a debtor's ability to repay their unsecured debts, such as through a Chapter 13 plan of reorganization, has developed to become a prime, and often dispositive consideration when determining whether, under the "totality of the circumstances" standard of § 707(b)(3)(B), a case should be dismissed for abuse. *In re Masella*, 373 B.R. 514, 518 (Bankr. N.D.Ohio 2007).

A debtor's ability to repay their debts is normally ascertained by reference to the amount of "disposable income" the debtor has available to repay their debts. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 435 (6th Cir. 2004). For purposes of bankruptcy law, the term "disposable income" is defined, generally, as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. *Id.*, citing 11 U.S.C. § 1325(b)(2). This assessment, as to the amount of "disposable income" available to a debtor, is made exclusively by the court, and is thus not dependent on the financial figures put forth by the debtor or any other party. *In re Gonzalez*, 378 B.R. 168, 173 (Bankr. N.D.Ohio 2007).

Page 3

**In re: Bridget Ramlow**
**Case No. 09-32296**

In this case, the Debtor claimed a negative disposable income of $373.83 per month. In arriving at this figure, the Debtor, who is employed full time as a nurse, set forth in her bankruptcy schedules a gross monthly salary of just over $5,000.00 per month. The Debtor also disclosed that, for the care of her two children, she receives monthly support payments of approximately $900.00.

Against her income, the Debtor disclosed four categories of payroll deductions, totaling $2,479.60 per month: (1) $1,262.52 for taxes; (2) $191.51 for insurance; (3) a 401(k) allocation of $175.11; and (4) a garnishment of $850.46. In addition, the Debtor claimed necessary, monthly expenses of $3,893.00, including a student-loan payment of $308.00, an auto payment of $340.00, an $800.00 expenditure for food and an $875.00 expenditure for rent.

Regarding the above figures, the UST took issue with those allocations made by the Debtor for her 401(k) account, her student loan and the garnishment against her wage. According to the UST, these allocations, totaling $1,333.57, may not be expensed against the Debtor's disposable income, but instead must be considered financial resources available to the Debtor which could be used to repay her creditors. Once these adjustments are made, the UST maintains that the Debtor's present claim of a $373.83 deficiency in her monthly disposable income should be modified to show a surplus of $959.74 – an amount which it is argued would, if paid into a Chapter 13 plan, make a meaningful remuneration to her unsecured creditors.

The position taken by the UST finds strong support. First, this Court, while not adopting an absolute prohibition on the practice, has generally not permitted debtors to deduct against their disposable income allocations made for student loans and retirement accounts, such as a 401(k). *See In re Kaminski*, 387 B.R. 190, 197 (Bankr. N.D.Ohio 2008) (fully explaining the basis for this approach). Second, any wage garnishment in effect against a debtor is stayed upon the commencement of a bankruptcy case. 11 U.S.C. § 362(a). Consequently, while under the protection of the bankruptcy stay, funds garnished on a prepetition basis are again available to a debtor to pay his or her general body of unsecured creditors. Finally, under any measure, an individual such as the Debtor, having a disposable income of almost $1,000.00 per month, amounting to $60,000.00 if

Page 4

In re: Bridget Ramlow
Case No. 09-32296

allocated to a five-year Chapter 13 plan of reorganization, will bear a heavy burden to show that they lack any ability to repay their creditors.

The Debtor countered these points, relating to the Court that, in her estimation, the financial assessment made by the UST is predicated on unrealistic financial assumptions. In particular, the Debtor related to the Court that her eldest child will soon turn 18 years of age, resulting in her child support income being reduced by half, or to approximately $450.00 per month. Additionally, the Debtor brought to the Court's attention that the wage withholding made for her taxes, disclosed to be $1,262.52 per month, is understated. In support of this statement, the Debtor produced a statement from the Internal Revenue Service showing that for the 2008 tax year, she still owed $1,358.65 and that she is required to pay at least $105.00 per month toward this liability. (Doc. No. 21, Ex. #1).

At this time, the Court has no reason to doubt the statements made by the Debtor regarding a decrease in her disposable income. Even with such adjustments, however, the Debtor acknowledges that she still has available $400.00 to $500.00 in monthly disposable income. Placed in a five-year Chapter 13 plan of reorganization, this income would afford the Debtor the ability to pay at least $24,000.00 to her unsecured creditors. This is plainly more than a *de minimis* amount. As such, it can only be concluded that, consistent with the position of the UST, the Debtor has at least some ability to repay her debts.

An ability to repay a portion of one's debts, however, is not necessarily the sole basis upon which dismissal for abuse under § 707(b)(3)(B) is to be predicated. To hold otherwise, would run afoul of the 'means test' of § 707(b)(2), wherein Congress provided that a debtor's ability to repay their debts would be the exclusive ground upon which to assess abuse, with a debtor's ability to pay then ascertained by reference to an objective mechanical formula. It also contradicts the explicit language of § 707(b)(3)(B) which does not limit a determination of abuse to a single consideration, but rather provides that a determination of abuse can only be made if "the *totality* of the circumstances . . . of the debtor's financial situation demonstrates abuse." (emphasis added).

Page 5

**In re: Bridget Ramlow**
**Case No. 09-32296**

A debtor's ability to repay their debts is, therefore, best viewed as simply a component, albeit an important and possibly dispositive component, when assessing abuse under § 707(b)(3)(B). In this regard, abuse may be found not to exist, despite a debtor having an ability to repay their debts, if other considerations mitigate against dismissal. *In re dePellegrini*, 365 B.R. 830, 832 (Bankr. S.D.Ohio 2007). Conversely, a debtor with no amount or a marginal level of disposable income may still have their case dismissed for abuse under § 707(b)(3)(B) if the totality of the debtor's financial situation so warrants. *In re Walker*, 383 B.R. 830, 839 (Bankr. N.D.Ga. 2008).

In *In re Krohn*, the Sixth Circuit put forth a number of considerations, beyond just a debtor's disposable income, relevant in assessing the existence of abuse under § 707(b). 886 F.2d 123 (6th Cir. 1989). Included among these: whether the debtor's bankruptcy was precipitated by any unforeseen or catastrophic event and whether the debtor has through "good, old-fashioned belt tightening" made an honest attempt to minimize their expenses. *Id.* at 126-27. Viewed from this perspective, the $400.00 to $500.00 in monthly disposable income available to the Debtor becomes less significant.

First, the primary event precipitating the Debtor's bankruptcy stems from what was presumably an unforseen event largely outside of the Debtor's control. Namely, the Debtor was recently divorced, with much of the debt at issue in this case stemming from this event. Second, all of the Debtor's expenses seem in line with what would be expected of a single mother with two teenage children. For example, allocating $1,675.00 per month to feed and house herself and her two teenage children, while not a nominal amount, does not strike this Court as extravagant. It thus appears that overall the Debtor has made a good faith effort to maximize her income and minimize her expense.

As corollary, nothing in the record of this case shows that the Debtor is attempting to use the bankruptcy process to discharge her unsecured debts while retaining and spending for luxury goods. For example, the Debtor is not attempting to reaffirm on an expensive car or house. In fact, just the opposite is true. The Debtor's only tangible asset of any value is her car, a 1997 Dodge Intrepid,

Page 6

In re: Bridget Ramlow
Case No. 09-32296

which was valued at just $700.00. The funds held by the Debtor in her 401(k) account are also minimal, with an approximate value of $3,000.00.

A couple of other considerations, while not expressly mentioned in *In re Krohn*, also blunt any inference that granting relief in this case would be an abuse. First, the Debtor has a considerable amount of student-loan debt, approximately $50,000.00, which, in the absence of a finding of undue hardship, will not be subject to an order of discharge entered by the Court. 11 U.S.C. § 523(a)(8); § 727(b). Thus, even if permitted to proceed under Chapter 7 of the Code, the relief accorded to the Debtor will be incomplete.

Expanding on this, the Debtor also has a considerable amount of unsecured debt, approaching a quarter of a million dollars, involving over 50 creditors, some of whom hold very small claims. Thus, even if the Debtor were to formulate a Chapter 13 plan of reorganization, the percentage of distribution to creditors would be minimal, with some of the creditor's claims possibly being too small in amount to receive a timely dividend. *See* FED.R.BANKR.P. 3010(b).[1]

In this regard, the Court also does not accept the UST's argument that the Debtor's unsecured debt burden should be reduced by $124,168.00, representing a deficiency judgment on a mortgage which it contends, being more than two-years old, is unenforceable pursuant to O.R.C. § 2329.08. While this could ultimately prove to be true, the position of the UST is based purely on supposition at this juncture. Of import, O.R.C. § 2329.08 is limited in certain respects such as when an execution has already been issued on the deficiency judgment. The provision also provides that the judgment-debtor may waive its protections under the statute.

---

[1]
In a chapter 12 or chapter 13 case no payment in an amount less than $15 shall be distributed by the trustee to any creditor unless authorized by local rule or order of the court. Funds not distributed because of this subdivision shall accumulate and shall be paid whenever the accumulation aggregates $15. Any funds remaining shall be distributed with the final payment.

Page 7

In re: Bridget Ramlow
Case No. 09-32296

      Upon taking all these mitigating circumstances into consideration, the Court is left with belief that the Debtor, in filing her Chapter 7 petition, was not, as abominated by the Sixth Circuit in *In re Krohn*, seeking to take advantage of her creditors. Instead, the overall picture presented to the Court of the Debtor is that of an honest person, trying to responsibly handle her finances, but because of unexpected events came to find herself in an untenable financial predicament. Consequently, while finding it a very close call given the level of disposable income available to the Debtor, the Court is not convinced that allowing the Debtor to obtain relief under Chapter 7 of the Bankruptcy Code would be an abuse. *See In re Stewart*, 383 B.R. 429, 434 (Bankr. N.D.Ohio 2008) (abuse found not to exist where the debtors, although having disposable income of $324.49, had after minimizing their expenses no significant leeway in their household budget).

      In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

      Accordingly, it is

      **ORDERED** that the Motion of the United States Trustee to Dismiss pursuant to 11 U.S.C. § 707(b)(1) and 11 U.S.C. § 707(b)(3), be, and is hereby, DENIED.

Dated: August 21, 2009

      _____
Richard L. Speer
United States
Bankruptcy Judge

# CERTIFICATE OF SERVICE

Copies were mailed this 21th day of August, 2009 to:


Joseph W Westmeyer, III
Westmeyer Law Office
421 N Michigan St
#C
Toledo, OH 43604-1606

Joseph W. Westmeyer, Jr
421 N Michigan St
#C
Toledo, OH 43604-1606


Bridget Ramlow
1137 Scott St
Maumee, OH 43537

Dean Wyman ust03
Office of the US Trustee
Howard M. Metzenbaum U.S. Court House
201 Superior Avenue, Suite 441
Cleveland, Oh 44114-1240

United States Trustee
Suite 441
H.M. Metzenbaum U.S. Courthouse
201 Superior Ave.
Cleveland, Oh 44114

                                          /s/Dawn Serna-Gensch
                                      Deputy Clerk, U.S. Bankruptcy Court